UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:10CV431-S

LACEY D. RIEBER                                                                    PLAINTIFF

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security                                        DEFENDANT

## MAGISTRATE JUDGE'S
## REPORT AND RECOMMENDATION

Before the Court is the complaint (DN 1) of Lacey D. Rieber ("plaintiff") seeking judicial

review of the final decision of the Commissioner pursuant to 42 U.S.C. §405(g). The plaintiff is

represented by attorney Christopher Harrell. Both the plaintiff (DN 13) and the defendant (DN 17)

have filed a fact and law summary. The District Judge has referred this case to the undersigned

magistrate judge (DN 14) to review the fact and law summaries and to submit a report and

recommendation. 28 U.S.C. §636. By order entered on October 26, 2010 (DN 12), the parties were

notified that oral arguments would not be held unless a written request therefor was filed and

granted. No such request was filed.

On April 14, 2007, the plaintiff filed applications for disability insurance and supplemental

security income benefits alleging that she became disabled on May 9, 2005, at age 25. She alleged

disability as a result of a shattered ankle with dead bone; neck back and hip pain; stress and

depression; migraines; and a tumor on her pituitary gland (Tr. 177). The plaintiff's employment

history includes work at a mortgage company, cashier and shift leader at a gas station, administrative

assistant at a mortgage company, clerk at a gas station, cashier at a grocery, customer service

representative for an insurance company, express mail courier, and U.S. Army soldier (Tr. 159, 178,

197). Administrative Law Judge Scott T. Miller ("ALJ") conducted a hearing on February 11, 2009, in Louisville, Kentucky (Tr. 28). The plaintiff was present and represented by Christopher Harrell. Also present and testifying was Mr. William Harpool, a vocational expert (Tr. 28).

The final decision of the Commissioner was rendered on May 21, 2009, by the ALJ. In support of the decision denying Title II and XVI benefits, ALJ Miller entered the following numbered findings:

1. The claimant met the insured status requirements of the Social Security Act as of May 9, 2005, the date she became disabled.

2. The claimant did not engage in substantial gainful activity during the established closed period of disability beginning with the alleged onset date of May 9, 2005 and continuing through March 31, 2008 (20 CFR 404.1520(b), 404.1571 *et. seq.*, 416.920(b) and 416.971 *et seq.*).

3. At all times relevant to this decision, the claimant has had the following severe combination of impairments: status post right ankle (talus) fracture with resultant avascular necrosis and osteoarthritis, obesity, neck, back and hip pain, and migraines (20 CFR 404.1520(c) and 416.920(c)).

4. From May 9, 2005 through March 31, 2008, the period during which the claimant was disabled, she did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d) and 416.920(d)).

5. After careful consideration of the entire record, the undersigned finds that, from May 9, 2005 through March 31, 2008, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except she could not have sustained full time work activity on a regular and ongoing basis secondary to pain and recovery time from multiple surgical procedures to the right ankle.

6. From May 9, 2005 through March 31, 2008, the claimant was unable to perform past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on August 31, 1979 and was 25 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. The claimant's acquired job skills do not transfer to other occupations within the residual functional capacity assessed for the period from May 9, 2005 through March 31, 2008 (20 CFR 404.1468 and 416.968).

10. From May 9, 2005 through March 31, 2008, considering the claimant's age, education, work experience, and residual functional capacity, there were no jobs that existed in significant numbers in the national economy that she could have performed (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

11. The claimant was under a disability, as defined by the Social Security Act, from May 9, 2005 through March 31, 2008 (20 CFR 404.1520(g) and 416.920(g)).

12. Medical improvement occurred as of April 1, 2008, the date the claimant's disability ended (20 CFR 404.1594(b)(1) and 416.994(b)(1)(i)).

13. Beginning on April 1, 2008, the claimant has not had an impairment or combination of impairments that meets or medically equals one of the impairments listed in 20 CFR part 404, Subpart P, Appendix 1 (20 CFR 404.1594(f)(2) and 416.994(b)(5)(i)).

14. After careful consideration of the entire record, the undersigned finds that, beginning on April 1, 2008, the claimant has had the residual functional capacity to perform the full range of sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a). Specifically, she is able to lift and/or carry 10 pounds occasionally and less than 10 pounds frequently. She can stand and/or walk with normal breaks for a total of at least 2 hours in an 8-hour workday. She can sit with normal breaks for a total of about 6 hours in an 8-hour workday. Pushing and or pulling movements are limited in the upper extremities. She should never climb ladders, ropes and scaffolds or more than occasionally climb ramps/stairs or crouch.

15. The medical improvement that has occurred is related to the ability to work (20 CFR 404.1594(b)(4)(i) and 416.994(b).

16. Since April 1, 2008, the claimant's age category has not changed (20 CFR 404.1563 and 416.963).

17. Beginning on April 1, 2008, the claimant has been able to perform her past relevant work as a clerk, which the vocational expert described as sedentary in exertion (20 CFR 404.1565 and 416.965).

18. Beginning on April 1, 2008, transferability of job skills is not material to the determination of disability because applying the Medical-Vocational Rules directly supports a finding of "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

19. Beginning on April 1, 2008, considering the claimant's age, education, work experience, and residual functional capacity, she has been able to perform a significant number of jobs in the national economy (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

20. The claimant's disability ended on April 1, 2008 (20 CFR 404.1594(f)(8) and 416.994(b)(5)(vii)).

<u>GOVERNING LEGAL STANDARDS</u>

The court has jurisdiction to examine the record that was before the Commissioner on the date of the Commissioner's final decision and to enter a judgment affirming, modifying, or reversing that decision. 42 U.S.C. §405(g), sentence four. In exercising its "sentence four" jurisdiction, the court is limited to determining whether the Commissioner's controlling findings are supported by substantial evidence and whether the Commissioner employed the proper legal standards in reaching the decision. *Richardson v. Perales*, 402 U.S. 389 (1971). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Kirk v. Secretary*, 667 F.2d 524 (6th Cir. 1981). It has been described as a sufficient amount of evidence "to justify, if the trial were to a jury, a refusal to direct a verdict." *Sias v. Secretary*, 861 F.2d 475, 480 n. 1 (6th Cir. 1988). In determining whether the Commissioner's findings are supported by substantial evidence, the court must examine the evidence in the record taken as a whole and must take into account whatever in the record fairly detracts from its weight. *Wyatt v. Secretary*, 974 F.2d 680 (6th Cir. 1992). However,

> The substantial-evidence standard allows considerable latitude to administration decision makers. It presupposes that there is a zone of choice within which the decision makers can go either way, without interferences by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.

*Mullen v. Secretary*, 800 F.2d 535, 545 (6th Cir. 1986).

When conducting substantial evidence review, the court is restricted to a consideration of the evidence that was before the Commissioner on the date of the final decision. When the Appeals Council declines to review the ALJ's decision and render a new decision, the ALJ's decision becomes the Commissioner's final decision. *Cotton v. Secretary*, 2 F.3d 692 (6th Cir. 1993).

To qualify for supplemental security income (SSI) benefits, a claimant must file a Title XVI application, must have insufficient earnings and other financial resources, and must be under a disability as defined by the Act. The determination of disability is essentially the same for Title II and Title XVI purposes. Disability determination is a five-step sequential evaluation process, to-wit:

STEP 1: The claimant must not be engaged in substantial gainful activity.

STEP 2: The alleged disabling impairment must be "severe." A severe impairment is one that "significantly limits" a claimants ability to do basic work activities [that are] necessary to do must jobs [such as] walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling." 20 C.F.R. §§ 404.1521 and 416.921. Only a "slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education and work experience: is deemed to be non-severe. *Farris v. Secretary*, 773 F.2d 85, 89-90 (6th Cir. 1985). Any physical or mental impairment that has more than a <u>de minimis</u>, or significant, effect on the claimant's ability to work is severe,

and the sequential evaluation should proceed to Step #3. Nevertheless, the severity step can and should continue to function as an "administrative convenience to screen out claims that are totally groundless solely from a medical standpoint." *Higgs v. Secretary*, 880 F.2d 860, 863 (1988). In addition, the severe impairment must satisfy the so-called duration requirement, to-wit, the impairment must be expected to result in death or "must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. §§ 404.1509 and 416.909.

STEP 3:    If the claimant has a medical condition that meets or exceeds the criteria for an impairment defined in Appendix 1 of 20 C.F.R. Part 404, Subpart P of the regulations ("the Listing"), a conclusive presumption attaches that the claimant is disabled.

STEP 4:    The claimant must not be able to perform his past relevant work either as he actually performed it or as it is generally performed in the national economy.

STEP 5:    If the claimant makes a <u>prima facie</u> showing that he cannot perform his past relevant work, the burden of going forward with the evidence shifts to the Commissioner to show that a significant number of jobs exist in the national economy that the claimant can perform. *Born v. Secretary*, 923 F.2d 1168 (6th Cir. 1990). If the evidence supports a finding that the claimant's age, education, work experience, and residual functional capacity (used to determine the claimant's maximum sustained work capability for sedentary, light, medium, heavy or very heavy work as defined by 20 C.F.R. §§ 404.1567 and 416.967) coincide with all the criteria of a particular rule of Appendix 2 of Subpart P, the Commissioner must decide whether the

claimant is disabled in accordance with that rule. Section 200.00(a) of Appendix 2; 20 C.F.R. §§ 404.1569a(b) and 416.969a(b).

If the claimant is found to have, in addition to the exertional impairments resulting in his maximum residual strength capabilities, nonexertional limitations, e.g., mental, sensory, or skin impairments, postural or manipulative limitations, and environmental restrictions; the Commissioner may rely on the particular rule only as a "framework for decisionmaking." Section 200.00(e)(1) and (2) of Appendix 2; 20 C.F.R. §§ 404.1569a(d) and 416.969a(d); *Kimbrough v. Secretary*, 801 F.2d 794 (6th Cir. 1986). Accordingly, the focus of judicial review in Step #5 cases is typically whether the controlling hypothetical posed to the vocational expert reflected all vocationally significant physical and mental limitations actually suffered by the claimant, *Varley v. Secretary*, 820 F.2d 777 (6th Cir. 1987).

If the claimant is found disabled at any point in the process, the ALJ must then determine whether the disability continues through the date of the decision. In making this determination, the Commissioner's regulations establish an **eight-step sequential evaluation procedure** to evaluate whether a claimant's disability has ceased for the Title II claim. 20 C.F.R. §§404.1594. (The Title XVI claim analysis follows the same procedure, excepting that substantial gainful activity is not a factor used to determine if the claimant's Title XVI disability continues, 20 C.F.R. §416.994(b)(5).)

In determining whether the Title II disability continues, at **step one**, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. 20 C.F.R. §404.1594(f)(1). If not, at **step two (step one for the Title XVI claim)**, the Commissioner must determine if the claimant's impairments meet or equal the severity of a listed impairment. 20 C.F.R.

§404.1594(f)(2) and 416.994(b)(5)(i)).  At **step three (step two for the Title XVI claim)**, if the impairment does not equal a listed impairment, the Commissioner inquires whether there has been a medical improvement to the claimant's impairment.  20 C.F.R. §404.1594(f)(3) and 416.994(b)(5)(ii).  At **step four (step three for the Title XVI claim)**, if there has been a medical improvement, the Commissioner asks whether it is related to the claimant's ability to work.  20 C.F.R. §404.1594(f)(4) and 416.994(b)(5)(iii).  At **step five (step four for the Title XVI claim)**, the Commissioner must determine if an exception to medical improvement applies, 20 C.F.R. §404.1594(f)(5) and 416.994(b)(5)(iv).  If the answer to step four is yes, the Commissioner goes to **step six (step five for the Title XVI claim)** and inquires whether all of the claimant's current impairments in combination are severe.  20 C.F.R. §404.1594(f)(6) and 416.994(b)(5)(v).  If the answer to step six is yes, the Commissioner at **step seven (step six for the Title XVI claim)** then asks whether the claimant has the residual functional capacity to perform any of his past relevant work activity.  20 C.F.R. §404.1594(f)(7) and 416.994(b)(5)(vi).  Finally, at **step eight (step seven for the Title XVI claim)**, if the claimant is unable to perform past relevant work, the Commissioner determines whether the claimant can perform other work.  20 C.F.R. §404.1594(f)(8) and 416.994(b)(5)(vii)).  If the claimant is able to perform other work, the Commissioner will find that the disability has ended.

## <u>BACKGROUND</u>

Plaintiff Lacey Rieber was injured in a motorcycle accident on May 9, 2005, at age 25 and suffered a shattered ankle which required several corrective surgeries and resulted in an area of avascular necrosis (bone death) in the talus bone and degenerative changes.  She also complained of neck, back and hip pain, stress, depression , migraines, and a pituitary tumor (Tr. 177).  In his

May 21, 2009, decision, ALJ Miller found that the claimant was under a closed period of disability from May 9, 2005, through March 31, 2008. He found that as of April 1, 2008, the plaintiff had experienced medical improvement related to her ability to work, and that she had the residual functional capacity to perform sedentary work.

## DISCUSSION

Plaintiff contests numerous findings contained in the administrative decision. Specifically, the plaintiff takes issue with the ALJ's initial findings in the Five-Step sequential evaluation process because: 1) the ALJ failed to find a severe mental impairment; 2) the ALJ failed to find that she meets the criteria for Listing 1.02A for major dysfunction of a joint by failing to give controlling weight to the opinions of Dr. Keith Myrick; and 3) failed to properly analyze the plaintiff's credibility and pain. In finding that the plaintiff's medical condition had improved such that her disability ceased on April 1, 2008, the ALJ followed an Eight-Step sequential evaluation process. The claimant faults the ALJ for numerous findings in this analysis as well, including: 4) the ALJ erred in finding that plaintiff was engaged in substantial gainful activity, and failed to analyze her work as either an unsuccessful work attempt or trial work period; 5) the ALJ erred in finding medical improvement in the plaintiff's RFC as of April 1, 2008, that is consistent with some sedentary work. The plaintiff alleges that the ALJ failed to give proper weight to the treating physician's opinion, failed to re-contact Dr. Myrick when faced with perceived inconsistencies in his report and records, and failed to properly analyze the plaintiff's credibility and pain. Each of these issues will be discussed below.

1.    **The plaintiff claims that the ALJ erred in failing to find that she suffers from a severe mental impairment.**

The plaintiff faults the ALJ for failing to find that she suffers from a severe mental impairment. According to the plaintiff, she suffers from a severe mental impairment as is evidenced by her treatment with Seven Counties Services. There she was assessed with Adjustment Reaction-Mixed Emotion, and a Global Assessment of Functioning (GAF) of 41 (Tr. 595), indicating serious symptoms. The plaintiff argues that her failure to seek extensive treatment for her mental health problems does not mean that they are not "severe." She explains that her lack of insurance and income explains the limited mental health treatment visits.

It is not uncommon for a claimant to argue the ALJ erred in failing to find one of his or her other physical or mental conditions to be a "severe" impairment. In *Maziarz v. Secretary*, 837 F.2d 240, 244 (6th Cir. 1987), the Sixth Circuit found it unnecessary to decide this question because the ALJ determined that at least one of the claimant's conditions was "severe" and continued with the remaining steps in the disability determination. The Sixth Circuit reasoned since the ALJ "properly could consider" the claimant's non-severe condition in assessing whether the claimant retained sufficient residual functional capacity to allow him to perform substantial gainful activity, the failure to find that the condition constituted a severe impairment could not constitute reversible error. *Id.* Thus, if the holding in *Maziarz* is applied, the failure to find that the plaintiff's mental impairment constituted a "severe" impairment could not constitute reversible error. *Id.*

The record reveals only two mental health visits to Seven Counties Services in January of 2008. Other evidence contained in the record supports the ALJ's finding of a less than severe mental impairment. For example, the plaintiff admits that she was never prescribed or took medication for her stress/depression symptoms (Tr. 49). Additionally, the plaintiff has failed to show

that her mental impairment would be expected to last for twelve continuous months to satisfy the

duration requirement. 20 C.F.R. §§ 404.1509, 416.909. Plaintiff has also failed to demonstrate how

she has been harmed by the failure to find her mental impairment "severe" within the meaning of

the regulations. She has not established that, but for this error, she would have been found disabled

at a subsequent step in the sequential evaluation process. Accordingly, the undersigned concludes

that the holding in *Maziarz* should be applied herein.

**2.** **The plaintiff claims that the ALJ erred by failing to give controlling weight to the opinions of treating orthopedist Dr. Keith Myrick which establish that plaintiff's condition meets Listing 1.02A of 20 C.F.R. Pt. 404, Subpt. P, Appendix 1., the listing for major dysfunction to a major peripheral weight-bearing joint.**

The plaintiff contends that she has an impairment of listing level severity under Listing

1.02A "Major Dysfunction of a Joint(s) (due to any cause)," 20 C.F.R. Pt. 404, Subpt. P, Appendix

1. To meet or equal a listed impairment, a claimant has the burden of establishing that she meets

each characteristic of a listed impairment, SSR 96-5p; 20 C.F.R. §§ 404.1525(d), 416.925(d); *Hale*

*v. Secretary*, 816 F.2d 1078, 1083 (6th Cir. 1984). Listing 1.02A requires evidence of:

1.   Gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability);

2.   Chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joints; and

3.   Findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:

A.   Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle) resulting in inability to ambulate effectively as defined in 1.00B2b.[1]

---

[1]

1.00B2b  Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's capacity to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the

Listing 1.02A provides for a conclusive presumption of disability if each of the above-listed criteria is satisfied. Plaintiff has cited to various medical records which appear to support the listing introductory paragraph criteria (Numbers 1 through 3 above), including findings of "marked deformity" on x-ray (Tr. 697), ankle joint space loss (Tr. 693) and avascular necrosis (bone death) (Tr. 272, 697). Plaintiff also notes subjective chronic joint pain following her third surgery in January 2010, some five years following the initial injury (Tr. 716). In addition, she contends that there is ample evidence of record of her inability to ambulate effectively to satisfy criterion A above.

In support of her contention that she meets the listing, the plaintiff relies upon the conclusions of her treating ankle specialist, Dr. Myrick. On March 19, 2009, Dr. Myrick completed an assessment wherein he opined that the plaintiff cannot ambulate without the use of a hand-held assistive device that limits the functioning of both upper extremities, and that she cannot sustain a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living (Tr. 694, 706). He also indicated that she is not able to walk one block at a reasonable pace on rough or uneven surfaces (Tr. 694, 706). Dr. Myrick noted that the plaintiff has significant pain due to her injury, that she suffers from avascular necrosis (bone death) of the talus which can never be repaired, and that she will eventually need ankle replacement or arthrodesis (Tr. 709). Plaintiff

use of a hand-held assistive device(s) that limits the functioning of both upper extremities. 1.00B2b(2) To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping or banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

claims that Dr. Myrick's opinions establish that her condition meets or equals a listed impairment, and are entitled to controlling weight as he is a treating source.

This argument involves application of what is commonly known as the treating physician rule. The courts have long held that the treating physician – especially one who has seen the patient over a period of time -- is in a unique position to evaluate the functional impact of an impairment on her or his patient, and the law recognizes the importance of that point of view by according deference to the opinions of treating physicians. In *Wilson v. Commissioner*, 378 F.3d 541 (6th Cir. 2004), the court again confirmed the weight ordinarily due the opinion of a treating physician. *Wilson* also underlined the fact that the courts are bound to hold the Commissioner to the requirements of 20 C.F.R. §404.1527(d)(2), which calls for the ALJ to state clear reasons for rejecting or for limiting the weight given the opinion of a treating physician. See also SSR 96-2p.

A treating physician's opinion, if uncontradicted, should be given complete deference. See, e.g., *Walker v. Secretary of Health & Human Servs.*, 980 F.2d 1066, 1070 (6th Cir.1992). A treating physician's opinion is entitled to controlling weight if the Commissioner finds "that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record." 20 C.F.R. S 404.1527(d)(2)(1999). In other words, the opinion of a treating physician need not be given controlling weight unless supported by clinical or diagnostic findings. See *Walters v. Commissioner of Social Security*, 127 F.3d 525, 530 (6th Cir.1997); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir.1993); *Kirk v. Heckler*, 742 F.2d 968, 973 (6th Cir.1984). However, "in all cases there remains a presumption, albeit a rebuttable one, that the opinion of a treating physician is entitled to great

deference," even if that opinion does not qualify for controlling weight. *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 242 (6th Cir. 2007).

The ALJ discusses Dr. Myrick's report at Tr. 23, and explains why he declined to give it controlling weight:

> While on the surface Dr. Myrick's residual functional capacity in Exs. 23F and 24F suggests the claimant meets Listing criteria, controlling weight is not given to this opinion due to the internal inconsistencies within. For instance, Dr. Myrick opined the claimant could not ambulate without the use of a hand-held device that *limited the functioning of both upper extremities*; however, he conversely noted the *claimant did not require bilateral upper limb assistive devices such as two crutches, two canes or a walker*. While he noted she could not sustain a reasonable walking pace over a sufficient distances to carry out activities of daily living, he did find her capable of traveling without companion assistance to and from work, using standard public transportation, carrying out routine ambulatory activities such as shopping and banking, and that she was able to climb a few steps using a handrail. The evidence of record does not support a finding the claimant is unable to ambulate effectively. While it is reasonable that the claimant would have some degree of pain, the record shows intermittent use of pain medications throughout 2008, and the claimant's testimony suggests she is not adhering to any pain medications at present. The record does not support her testimony as to significant swelling in the ankle. Her description of her day to day functioning indicates sedentary work is within her capability. She remains able to engage in routine daily living tasks such as light household chores, cooking, cleaning, laundry, shopping, and driving. She can watch television and use the computer. Lastly, to date the claimant has declined to undergo any further surgeries, even though such have been discussed. She has not apprised any physician that her nighttime sleep is disrupted every hour or that she naps in the daytime due to pain.

The ALJ fully took into account the opinions contained in Dr. Myrick's March 19, 2009, report, and declined to give those opinions controlling weight as the report was internally inconsistent and was inconsistent with other substantial evidence contained in the record. For example, Dr. Myrick indicated in one portion of the report that the plaintiff required use of a hand-held device which limited functioning of both upper extremities for ambulation; in another section, he noted that she did not require bilateral upper limb assistive devices (Tr. 694). The report also

contained the opinion that plaintiff would be unable to sustain a reasonable walking pace over a sufficient distance to perform daily activities, but goes on to note numerous daily activities that she would be capable of performing without assistance. Further inconsistences exist between the treatment records of Dr. Myrick and his March 19, 2009, report. For example, there are entries in Dr. Myrick's treatment notes that indicate only mild edema of the right foot, but that otherwise it was WNL – within normal limits (Tr. 492-3; Tr. 481-2). There are also inconsistencies between other medical records and the limitations assessed by Dr. Myrick. For example, the Shepherdsville Family Health Clinic noted on March 7, 2007, that the plaintiff walks with a cane (Tr. 261), not two canes, a walker, or crutches which would be required to demonstrate ineffective ambulation.

Contrary to the plaintiff's assertions, the ALJ's characterization of the medical records of Dr. Myrick is not in error. The clinical records simply do not portray an individual with the limitations set forth in Dr. Myrick's March 19, 2009, report. Accordingly, the magistrate judge finds no error in the ALJ's declining to give controlling weight to Dr. Myrick's opinions that the plaintiff's condition meets listing level severity, and renders her disabled from all work.

Additionally, the plaintiff contends that the ALJ was required to recontact Dr. Myrick when faced with perceived inconsistencies between his report and records. The regulations indicate that an ALJ will recontact a medical source when the evidence or records provided by the source are inadequate to determine whether the claimant is disabled, 20 C.F.R. §§ 404.1512(3), 416.912(e). Here, there was sufficient evidence of record for the ALJ to make the determination of disability, and no reason to recontact Dr. Myrick when concluding that Dr. Myrick's opinion was inconsistent internally and with other evidence of record.

**3.      The plaintiff claims that the ALJ failed to properly analyze the her credibility and pain.**

The plaintiff takes issue with the ALJ's noting that she only intermittently used pain medications throughout 2008, and as of the date of the decision, was not adhering to any pain medication regimen (Tr. 23). She claims that it is particularly cruel for the ALJ to hold that against her, as she is unable to afford pain medication. The plaintiff also faults the ALJ for discrediting her testimony about pain in her neck, shoulder, lower back, and migraine headaches because of her lack of treatment for those conditions.

The plaintiff challenges the ALJ's credibility findings, insisting that the ALJ erred in evaluating her complaints of disabling pain. SSR 96-7p provides instruction on credibility evaluation as follows:

> In general, the extent to which an individual's statements about symptoms can be relied upon as probative evidence in determining whether the individual is disabled depends on the credibility of the statements. In basic terms, the credibility of an individual's statements about pain or other symptoms and their functional effects is the degree to which the statements can be believed and accepted as true. When evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements.

20 C.F.R. §§ 404.1529(c) and 416.929(c) describe the kinds of evidence, including the factors below, that the adjudicator must consider in addition to the objective medical evidence when assessing the credibility of an individual's statements:

1)      Your daily activities;

2)      The location, duration, frequency, and intensity of your pain or other symptoms;

3)      Precipitating and aggravating factors;

4)      The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;

5)      Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;

6)      Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

7)      Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

A significant consideration in the evaluation of pain is the credibility of the claimant, given that tolerance of pain is very much an individual matter, *Villareal v. Secretary*, 818 F.2d 461, 463 (6th Cir. 1987).  An ALJ may distrust a claimant's allegations of disabling symptomatology if the subjective allegations, the ALJ's personal observations, and the objective medical evidence contradict each other, *Moon v. Sullivan*, 923 F.2d 1175, 1183 (6th Cir. 1990).  In other words, discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence, *Walters v. Commissioner*, 127 F.3d 525, 532 (6th Cir. 1997).  Furthermore, if the ALJ rejects the claimant's testimony as not credible, he or she must state reasons for doing so, *Auer v. Secretary*, 830 F.2d 594, 595 (6th Cir. 1987).  The plaintiff disagrees with the ALJ's stated reasons for rejecting her credibility.  It is clear that the ALJ did credit the claimant's testimony regarding pain to some degree, as he awarded a closed period of disability benefits.  However, the ALJ indicated that he was unable to fully credit the plaintiff's continued complaints of disabling pain after April 1, 2008, based upon the record.

The ALJ carefully analyzed the claimant's chronological medical treatment, her prior work history and work completed between 2008 and 2009, her activities of daily living, her use of assistive devices in ambulating, her intermittent use of pain medications, and the lack of treatment for certain complaints.  While the ALJ did credit the claimant's testimony regarding pain to some

degree, he was unable to fully credit it based upon the record. Accordingly, the Court finds that the ALJ properly analyzed the evidence of record and set forth specific reasons for rejecting plaintiff's complaints of debilitating pain.

**4.    The plaintiff claims that the ALJ erred in finding that plaintiff experienced medical improvement as of April 1, 2008 by finding she was engaged in substantial gainful activity, as he failed to analyze her work as either an unsuccessful work attempt or a trial work period.**

As explained earlier in this report, the Commissioner's regulations establish an eight-step sequential evaluation procedure to evaluate whether a claimant's disability has ceased for a Title II claim. 20 C.F.R. §§404.1594. (The Title XVI claim analysis follows the same procedure, excepting that substantial gainful activity is not a factor used to determine if the claimant's Title XVI disability continues, 20 C.F.R. §416.994(b)(5).) In the present case, the ALJ made an initial determination of disability, and properly employed the eight-step sequential evaluation procedure to determine that the plaintiff's disability ceased as of April 1, 2008 as a result of medical improvement. (The medical improvement standard applies to cases involving a closed period of disability, *Niemasz v. Barnhart*, 155 Fed. Appx. 836, 839-40 (6th Cir. 2005).

The Social Security Act provides that disability benefits may be terminated on "a finding that the physical or mental impairment on the basis of which such benefits are provided has ceased, does not exist, or is not disabling." 42 U.S.C. §423(f). Such a finding – as in this case – must be supported by substantial evidence which demonstrates that there has been medical improvement, that such medical improvement is related to the ability to work, and that the individual is now able to engage in substantial gainful activity, 42 U.S.C. §423(f)(1).

The first step in the medical improvement analysis for purposes of Title II benefits is to determine whether or not the plaintiff is engaged in substantial gainful activity. The evidence of

record indicates that the plaintiff returned to work in 2008, for a temp agency and was able to perform clerical tasks in a seated position with some accommodation (Tr. 41, 69-71). In the second quarter of 2008, her earnings indicate substantial gainful activity, at $5,658.00 in wages. The third quarter wages in 2008 totaled $2,368.00, and fourth quarter wages totaled $3,248.00. In sum, she earned $11,276.38 in the year 2008. As of January 6, 2009, she was working at Check Advance, a payday loan company (Tr. 42). For Title II purposes, it appears that the ALJ correctly determined that the plaintiff was engaged in substantial gainful activity, and that the plaintiff has failed to refute this finding. The regulations provide for exceptions to the medical improvement standard where substantial evidence shows the claimant can engage in substantial gainful activity.

The plaintiff argues that it was error for the ALJ not to consider this work to be a trial work period for purposes of continuing her disability despite her work effort under 20 C.F.R. §404.1592. However, the plaintiff has failed to show that she was in fact entitled to a trial work period. Because this was an award of a closed period of disability, 20 C.F.R. §404.1594(d)(5) appears to indicate that the ALJ was under no obligation to consider whether she was entitled to a trial work period because she was engaging in substantial gainful activity during the relevant time period of ALJ Miller's inquiry – i.e., before his decision granting a closed period award. In other words, the period of disability opened and closed before the plaintiff would have become entitled to a trial work period. This is consistent with the holding in *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988), finding that a trial work period only applies after a person has been adjudged disabled.

The plaintiff's argument that her work in 2008 and 2009, was an unsuccessful work attempt is equally unpersuasive. To prove that the plaintiff's work at sedentary desk jobs in 2008 and 2009, were unsuccessful work attempts, a claimant who worked for six months or less must prove that her

impairment forced her to stop working, or reduced her work level so that her earnings fell below substantial gainful activity, 20 C.F.R. §404.1574(c)(1). The plaintiff's work appears to have lasted for longer than three months, and therefore she would have to show that: 1) she was frequently absent from work due to her impairments; 2) her work was unsatisfactory because of her impairments; 3) she worked during a period of temporary remission of her impairments, or 4) she worked under special conditions which were essential for her performance, but which were removed, 20 C.F.R. §404.1574(c)(4); *Carreno v. Commissioner*, 99 Fed.Appx. 594 (6th Cir. 2004).

The plaintiff has not shown that her work meets the criteria for an unsuccessful work attempt. Her work reviewing mortgages was performed through a temp agency, and there is no suggestion that she was frequently absent from work because of her impairments, that her work was unsatisfactory because of her impairments, or that she was only able to work because of a temporary remission of her condition. On the contrary, plaintiff indicated that she was required to quality check 50 to 60 files per day, and she apparently had no problem meeting that quota. While she was able to rely upon another employee to walk her files back to a scanning area, and was provided with a personal printer at her work station, there are no indications that her work was unsatisfactory or that the job ended because she could no longer be accommodated in some way. There is insufficient evidence in the record to establish that the plaintiff did not work between July and September of 2008, as counsel attempts to convey (DN 13, page 7). In fact, the earnings records from third quarter would appear to indicate continued work activity during that period. When evaluating a claimant's work activity for purposes of substantial gainful activity, the primary consideration is the amount of earnings derived from that work activity, and the record contains significant earnings from each of the jobs she held in 2008 and 2009. The plaintiff has simply failed to show that these

jobs ended as a result of her impairments or of the removal of special accommodations or conditions which accounted for her impairments. Accordingly, the court declines to find the plaintiff's work during 2008 and 2009, to be unsuccessful work attempt(s).

While it appears to this court that the ALJ could have stopped the Title II analysis under 404.1594(d) exceptions to the medical improvement standard as the plaintiff had returned to substantial gainful activity, the ALJ nonetheless continued with the sequential evaluation process and made several additional findings that support the plaintiff's medical improvement as of April 1, 2008.

The second step of the medical improvement sequential evaluation process (step one for Title XVI benefits) inquires whether the claimant's impairments meet or equal the severity of a listed impairment. As discussed herein, the ALJ was not bound to accept the March 19, 2009, opinions of Dr. Myrick which arguably place the plaintiff's condition at listing level severity. For the reasons stated above, the court finds that the ALJ properly declined to accept the opinions of Dr. Myrick as controlling regarding listing level severity, and stated sufficient reasons for so doing.

At the third step, the ALJ found that there was medical improvement in the plaintiff's condition as of April 1, 2008. In addition to the plaintiff's return to work at levels of substantial gainful activity beginning in the second quarter of 2008, the ALJ also notes that as of April 2008, the plaintiff was no longer taking even over-the-counter medications on a persistent basis. While she was limited in standing and walking, the plaintiff's day to day activities were consistent with a sedentary lifestyle. These factors, substantiated in the record, support the ALJ's determination that medical improvement had occurred as of April 1, 2008. Additionally, the state agency consultants who initially reviewed the medical evidence had projected that, within 12 months of April 2007 (Tr.

299), the plaintiff would be able to return to sedentary work, which she in fact did.  Accordingly, the court finds that the ALJ's determination of medical improvement as of April 1, 2008 is supported by substantial evidence and is entitled to deference.

**5.  The plaintiff claims that the ALJ erred in finding improvement in her RFC as of April 1, 2008 that is consistent with some sedentary work.**

Residual functional capacity is an assessment of a claimant's remaining capacity for work once his or her limitations have been taken into account, Howard v. Commissioner, 276 F.3d 235, 239 (6th Cir. 2002).  Residual functional capacity is what a claimant can still do on a sustained, regular, and continuing basis, Cohen v. Secretary of HHS, 964 F.2d 524 (1992).  While the determination of a claimant's RFC is "reserved to the Commissioner," it should be based upon the medical and non-medical evidence as a whole.  20 C.F.R. §416.927(e)(2).

At the fourth step of the medical improvement eight-step sequential evaluation process, the ALJ found that the plaintiff retains the ability to perform the full range of sedentary work.  This finding is consistent with the state agency assessment at Tr. 299, as well as the plaintiff's return to sedentary work in the second quarter of 2008.  The vocational expert ("VE") testified that an individual with the limitations stated in Finding 14, supra, would retain the ability to perform sedentary work in the national economy, including such jobs as her previous sedentary clerical work, routine inspection jobs, sedentary assembly work, and surveillance monitor jobs (Tr. 78-79).  The plaintiff has failed to demonstrate that she suffers from additional, vocationally relevant limitations that were not contemplated in the vocational hypothetical posed to the vocational expert at the hearing.  In fact, her return to sedentary clerical work is the strongest proof that she does retain the residual functional capacity to perform sedentary work.  The medical improvement found by the ALJ is supported by substantial evidence, as is the improved residual functional capacity finding.

These improvements found by the ALJ are directly related to the plaintiff's ability to work, and are supported by substantial medical and non-medical evidence in the record.

## RECOMMENDATION

For the foregoing reasons, the undersigned concludes that the Commissioner's findings are supported by substantial evidence and **RECOMMENDS** that the complaint be **DISMISSED**.

## NOTICE

Pursuant to 28 U.S.C. §636(b)(1), as amended, any party shall have a period of fourteen (14) days from the date of notice of electronic filing within which to file written objections to the foregoing report with the Clerk of the Court. Further and pursuant to Fed.R.Civ.P. 72(b), any party may file a response to objections filed by another party within fourteen (14) days after being served with a copy of said objections. A period of three days shall be added to each fourteen (14) day period above pursuant to Fed.R.Civ.P. 6(d), for a total of seventeen (17) days.

The court shall not conduct a de novo review of objections that are general, conclusory, or merely adopt previous pleadings. The original objections shall be sent to the Clerk of Court either electronically or by mail. A copy of any objections and response thereto shall be served on the undersigned at Suite 330, 501 Broadway, Paducah KY 42001 or via e-mail to w_david_king@kywd.uscourts.gov. Failure of a party to file timely objections shall constitute a waiver of the right to appeal by that party. *Thomas v. Arn*, 474 U.S. 140 (1985).